# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRYAN A. LIPPERT,          )
          Petitioner,       )     **Civil Action No. 11-131 Erie**
                          )
        v.                 )
                          )     **Magistrate Judge Susan Paradise Baxter**
S.R. GLUNT, et al.,         )
          Respondents.   )

## OPINION AND ORDER[1]

      Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner

Bryan A. Lippert.  [ECF No. 5].  He is challenging the judgment of sentence imposed upon him by the

Court of Common Pleas of Erie County at Criminal Docket No. CP-25-CR-1665-2005.  For the reasons

set forth below, his petition is denied and a certificate of appealability is denied.

## I.

### A.    Relevant Background[2]

      On February 14, 2006, an Erie County jury convicted Petitioner of three counts of attempted

unlawful contact with a minor (sometimes referred to herein as "attempted UCM"), and one count each

of attempted corruption of minors, attempted involuntary deviate sexual intercourse ("IDSI"), and

attempted indecent assault.  The Superior Court of Pennsylvania summarized the evidence introduced at

Petitioner's trial as follows:

> [Petitioner's] convictions were based on [his] sexually explicit communications to a law
> enforcement officer posing as a 13-year-old girl in an Internet chat room sting operation
> targeting sexual offenders.

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a
U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]     Respondents have submitted the Common Pleas Court's file and relevant transcripts.  The documents contained in
the Common Pleas Court's file are indexed and numbered 1 through 110.  They shall be cited to as "CP Dkt. No. ___ ."

…. On November 24, 2004, [Petitioner] initiated contact via his home computer in an Internet chat room with a person using the screen name "CutiePA13." CutiePA13 purported to be a 13-year-old girl, but was really Detective Lisa M. Carroll. (Notes of testimony, 2/13/06 at 24-26, 31, 41). Detective Carroll was assigned to a task force focused on Internet crimes against children ("ICAC"). (Id. at 24). During their initial conversation, [Petitioner], who was using the screen name "ScriptKitty," indicated that he was a 29-year-old single male from Pennsylvania. He described himself as being 6'1", 200 pounds, with brown hair and brown eyes. (Id. at 32-33).

At trial, Detective Carroll read the transcripts of each Internet conversation into evidence. During the first conversation, [Petitioner] questioned CutiePA13 about her sexual experience and indicated that he was interested in pursuing a sexual liaison with her. He asked intimate questions regarding whether she was a virgin, whether she like older men, and if she was waiting for the right man to make love to her. (Id. at 32-35). [Petitioner] asked CutiePA13 whether she would be willing to perform specific sexual acts with him, including oral and vaginal intercourse. [Petitioner] assured her that she would take great pleasure in these activities and that he would be very "gentle." (Id. at 37-39).

During the initial conversation, [Petitioner] also asked CutiePA13 if she would meet him during the weekend and inquired where she lived in relation to Erie; CutiePA13 responded that she lived in Philadelphia. [Petitioner] stated that he would drive "about seven hours" to Philadelphia to meet with her. (Id. at 35-36). [Petitioner] instructed CutiePA13 not to tell anyone about what would happen between them as he could go to jail. (Id. at 36-37). [Petitioner] also assured her that he would use a condom so she would not get pregnant. (Id. at 38-39).

Approximately six days later on November 30, 2004, Detective Carroll went undercover online using the same screen name; the detective initiated contact with [Petitioner]. (Id. at 42, 64, 66). [Petitioner] again asked "if [he] can come down yet?" During this conversation, [Petitioner] inquired when he could telephone her and also requested an email from her describing all of the things she wanted to try when they met. (Id. at 44-47).

The third time they talked online, on December 6, 2004, [Petitioner] changed his screen name to Belip97, explaining that he just felt like changing his name. (Id. at 48, 49, 64). [Petitioner] wanted to know when they could meet, stating that he could take off work anytime to drive to Philadelphia. (Id. at 49-51). [Petitioner] expressed that he wanted to make love to CutiePA13 and "taste her." (Id. at 50). Before the conversation ended, [Petitioner] again asked when they could meet.

In the fourth conversation, on December 18, 2004, [Petitioner] again pressed CutiePA13 to meet.

> [Petitioner]:    And I'll come down when you say so. I told you that before.
>                                - - -
>                  Any time. I can always take off of work.

                       - - -

I can't wait to hold you in my arms and then make love to you.

                       - - -

CutiePA13:      So if I said tomorrow, … that's cool?

[Petitioner]:     Yes.

                       - - -

So tell me what days.

CutiePA13:      Monday, Tuesday, have to check about Wednesday.

[Petitioner]:     Okay.  I'll plan on coming down Monday.  I need a number to call.

CutiePA13:      Like what time around?

[Petitioner]:     Probably around 3PM.

                       - - -

CutiePA13:      Okay.  I'll talk to you about it tomorrow.

[Petitioner]:     Okay.

CutiePA13:      See you.

[Petitioner]:     I love you.

Id. at 54-59.

However, [Petitioner] did not contact CutiePA13 the following day as discussed. Six weeks later, on January 29, 2005, CutiePA13 initiated contact with [Petitioner].  The conversation was very brief, consisting of three lines, as [Petitioner] indicated he was working.  (Id. at 60, 65).  Thereafter, Detective Carroll referred the case to Detective Jessica Lynn ("Detective Lynn") in Erie County.  Detective Lynn obtained a search warrant and an arrest warrant.  (Id. at 88-89).  [Petitioner's] home computer was seized.

[Petitioner] testified at trial that he remembered talking to CutiePA13 but maintained that he was role-playing.  (Id. at 111, 113).  He explained that he did not think he was talking to a 13-year-old girl in the chat room, but rather an adult who was fantasizing with him.  (Id. at 110-111).  [Petitioner] stated that he never made an attempt to contact CutiePA13 by phone nor did he attempt to travel or get a hotel room with this "fantasy person."  (Id. at 113).

(CP Dkt. No. 75, Commonwealth v. Lippert, No. 116 WDA 2007, slip op. at 2-8 (Pa.Super. Nov. 19, 2008) ("Lippert 1") (footnotes omitted)).

After Petitioner was arrested, the Erie County Public Defender's Office was appointed as his counsel. The Commonwealth initially charged him with, *inter alia*, three counts of unlawful contact with a minor, not with *attempted* unlawful contact with a minor. Christine Fuhrman Konzel, the Chief Public Defender at the time, filed an omnibus pre-trial motion (CP Dkt. No. 17) and argued that: "The Commonwealth's case does not have a *prima facie* case against the defendant regarding the charges of Unlawful Contact with Minor and Corrupting the Morals of a Minor *because at no time was the alleged victim(s) in this case a minor*." (CP Dkt. No. 17) (emphasis added). The motion was discussed at a pre-trial hearing conducted on November 30, 2005, in which the Assistant District Attorney indicated that the Commonwealth would file a motion to amend the Information to charge Petitioner with *attempt* at unlawful contact with a minor. (11/30/05 Hr'g Tr. at 15-23). The next day, the Commonwealth filed the motion and the court granted it. (CP Dkt. Nos. 26-27).

Petitioner's jury trial commenced on February 13, 2006. Assistant Public Defenders Anthony Logue and James Pitonyak represented him. At the trial's conclusion, the jury found him guilty of all counts. On September 7, 2006, the court sentenced him to an aggregate term of incarceration of 129-258 months. Petitioner filed an appeal with the Superior Court. He raised ten claims, of which the following two are relevant to this proceeding:

(1)     The evidence was insufficient to support his convictions; and,

(2)     "Did the Court fail to merge charges and violate Double Jeopardy?"

(CP Dkt. No. 75, Lippert 1, No. 116 WDA 2007, slip op. at 10 (quoting Appellant's brief at 4)).

On November 19, 2008, the Superior Court of Pennsylvania issued a Memorandum in which it affirmed in part and vacated in part Petitioner's judgment of sentence. It agreed with him "that mere conversation of a desire to become sexually active with a 13-year-old girl, unaccompanied by any other corroborative action, is insufficient to demonstrate a substantial step for the crimes of IDSI and indecent

4

assault[.]"  It further held:  "however, we find that [Petitioner's] actions were sufficient to support the convictions of attempt to commit unlawful contact of a minor and attempt to commit corruption of minors."  (CP Dkt. No. 75, <u>Lippert 1</u>, No. 116 WDA 2007, slip op. at 10-11).  The Superior Court vacated Petitioner's judgment of sentence with respect to the attempted IDSI and attempted indecent assault convictions and remanded for resentencing.  The Superior Court also denied Petitioner's double jeopardy claim on the merits.  (<u>Id.</u> at 27-28).

On remand, the trial court entered a new order in which it sentenced Petitioner to an aggregate term of incarceration of 96-204 months.  On July 2, 2010, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*  (CP Dkt. No. 98).  The court appointed William J. Hathaway, Esquire, to represent him.  Hathaway subsequently filed a petition for leave to withdraw as counsel and an accompanying "no-merit" letter pursuant to <u>Commonwealth v. Turner</u>, 544 A.2d 927 (Pa. 1988) and <u>Commonwealth v. Finley</u>, 550 A.2d 213 (Pa. 1988).  (CP Dkt. No. 100).

In August of 2010, the PCRA Court granted Hathaway's petition for leave to withdraw (CP Dkt. No. 103), and issued an Opinion and Notice of Intent to Dismiss PCRA Without a Hearing Pursuant to Pa.R.Crim.P. 907(1).  (CP Dkt. No. 101).  On September 22, 2010, after considering Petitioner's response to the Notice of Intent to Dismiss (CP Dkt. No. 104), the court issued a Final Order denying the PCRA motion.  (CP Dkt. No. 105).

In his subsequent *pro se* appeal to the Superior Court, Petitioner raised, *inter alia*, the following two claims, which he now raises in the habeas petition that he has filed with this Court:

(1)     His trial counsel were ineffective for "failing to call the character witness, Norman Loesch"; and,

(2)     His "pretrial counsel was ineffective for filing issues in a pretrial motion when she should have waited and asked for a [judgment] of acquittal at trial, and this

5

resulted in a conviction on three charges [of attempted unlawful contact with a
minor] which [Petitioner] should have been acquitted of?

(CP Dkt. No. 109, <u>Commonwealth v. Lippert</u>, No. 1646 WDA 2010, slip op. at 4-5 (Pa.Super. May 3,

2011) ("<u>Lippert 2</u>")).

On May 3, 2011, the Superior Court issued a Memorandum in which it affirmed the PCRA

Court's decision to deny post-conviction relief.  It denied both of Petitioner's claims on the merits.  (CP

Dkt. No. 109, <u>Lippert 2</u>, 1646 WDA 2010, slip op. at 5-13).

Following the conclusion of his PCRA proceeding, Petitioner filed with this Court his petition

for a writ of habeas corpus.  [ECF No. 5].  He raises the same two ineffective assistance of counsel

claims that he raised in the PCRA proceeding.  He also claims, as he did in his direct appeal, that his

rights under the Double Jeopardy Clause were violated because "the court failed to merge certain

charges," and that there was insufficient evidence to support the jury's verdict of guilt on the charges of

attempt to commit unlawful contact with a minor and attempt to commit corruption of minors.  [ECF

No. 5 at 5-11].  Respondents have filed an Answer [ECF No. 16], and the relevant state court records.


**B.**     **Discussion**

1.     **Standard of Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C.

§ 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under

this statute, habeas relief is only available on the grounds that the petitioner's judgment of sentence was

obtained in violation of his federal constitutional rights.  28 U.S.C. § 2254(a).  In addition, AEDPA

"modified a federal habeas court's role in reviewing state prisoner applications in order to prevent

federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible

under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States*; or
> >
> > (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.

(Emphasis added).

The U.S. Court of Appeals for the Third Circuit has explained how to apply AEDPA's standard of review at § 2254(d):

> Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries. See, e.g., Harrington v. Richter, — U.S. — , 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). The first is whether the state court decision was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The second is whether the state court decision "involved an unreasonable application of" such law. § 2254(d)(1). And the third is whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. § 2254(d)(2).
>
> The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76, 123 S.Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75, 123 S.Ct. 1166.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005) (citing Williams, 529 U.S. at 405, 120 S.Ct. 1495, and Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, — U.S. — [ ], 131 S.Ct. 1388, 1401-03, 179 L.Ed.2d 557 (2011).

Roundtree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011).

The Supreme Court also has stressed the "highly deferential" review that this Court must accord

the state court's decision under § 2254(d):

We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for

obtaining relief than *de novo* review.  Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).  AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010).  See also Harrington, 131 S.Ct. at 786 ("If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings…. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.").

Because the Superior Court denied each of Petitioner's claims on the merits, this Court's analysis of them is governed by AEDPA's deferential standard of review at § 2254(d).

### 2.    Insufficient Evidence

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Petitioner's claim that there was insufficient evidence to support the jury's verdict of guilt on the charges of attempt to commit unlawful contact with a minor and attempt to commit corruption of minors is set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense.  Id. at 309. Under Jackson, evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319 (emphasis in original).  "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only

that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" Coleman v. Johnson, — U.S. — , 132 S.Ct. 2060, 2064 (2012) (*per curiam*) (quoting Jackson, 443 U.S. at 319).

In rejecting this insufficiency of the evidence claim, the Superior Court applied the Pennsylvania equivalent of the Jackson standard. (CP Dkt. No. 75, Lippert 1, No. 116 WDA 2007, slip op. at 11). See also Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). See, e.g., Williams, 529 U.S. at 406. Therefore, the only remaining question for this Court to decide is whether its decision was an "unreasonable application of" Jackson or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The Supreme Court has recently stressed to federal habeas courts conducting this analysis that:

> [w]e have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury [or, in the case of Petitioner's non-jury trial, the trial judge] … to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." Cavazos v. Smith, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U.S. __, __ (2010) (slip op., at 5)).
>                - - -
> [T]he only question under Jackson is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

Coleman, 132 S.Ct. at 2062, 2065.

In support of this claim, Petitioner points to the fact that the Superior Court found that his "chats" were insufficient to sustain his convictions for attempted IDSI and attempted indecent assault and argues

that it erred in refusing to vacate his remaining convictions. The Court rejects Petitioner's argument. The Superior Court explained why the online discussions or "chats" that Petitioner engaged in with the purported minor, while insufficient to support the jury's verdict with respect to his convictions for attempted IDSI and attempted indecent assault, were nonetheless sufficient to uphold his convictions on three counts of attempted unlawful contact with a minor (for the three conversations he initiated) and one count of attempted corruption of a minor. It stated:

> The Crimes Code defines criminal attempt as follows:
>
> > (a)  **Definition of attempt**.-- A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.
>
> 18 Pa.C.S.A. § 901(a). Thus, the two elements of the offense of criminal attempt are: (1) intent to commit a specific crime, and (2) a substantial step toward completion of that crime. Commonwealth v. Henley, 504 Pa. 408, 414, 474 A.2d 1115, 1118 (1984). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." Commonwealth v. Gilliam, 417 A.2d 1203, 1205 (Pa.Super. 1980). Thus, the Commonwealth needed to demonstrate that appellant had intent to commit [unlawful contact with a minor], IDSI, indecent assault, and corruption of minors and that appellant committed an act constituting a substantial step towards the commission of those crimes. Id.
>
> ### INVOLUNTARY DEVIATE SEXUAL INTERCOURSE
>
> We begin by looking at the crime of attempt/IDSI. The crime of IDSI is defined in Chapter 31 of the Pennsylvania Crimes Code as follows:
>
> > (a)  **Offense defined.**-- A person commits a felony of the first degree when he or she engages in deviate sexual intercourse with a complainant:
> >
> > - - -
> >
> > (7)  who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.
>
> 18 Pa.C.S.A. § 3123(a)(7). Section 3101 defines the term deviate sexual intercourse as follows:
>
> > **'Deviate sexual intercourse.'** Sexual intercourse per os [oral] or per anus between human beings and any form of sexual intercourse with an animal. The

term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S.A. § 3101.

First, appellant was aware that CutiePA13 was purportedly a 13-year-old female and, obviously, that he was more than four years older than she. (Notes of testimony, 2/13/06 at 31, 41). In terms of intent, appellant's conversations speak for themselves. We find this element to have been met as it is clear that the conversations indicated that appellant intended to engage in oral intercourse with CutiePA13.

However, we cannot find that the Commonwealth presented evidence that appellant completed an act constituting a substantial step toward the completion of IDSI. Appellant's conduct consisted of five chat conversations via the Internet over a two-month period with a person whom he believed to be a 13-year-old girl. Appellant claims that the conversations were "mere preparation" that did not amount to criminal attempt. The trial court held that appellant's conversations demonstrate a substantial step as his continued attempts to get CutiePA13 to meet him shows "his persistence to make these 'chats' a reality." (Trial court opinion, 11/15/06 at 9).

- - -

Here, appellant engaged in sexually explicit conversations over the Internet but took no additional action in furtherance of IDSI or indecent assault with CutiePA13. Appellant never made arrangements or preparations to drive from his home to a meeting place. When CutiePA13 indicated she wanted to talk the following day and set up a meeting time, appellant did not follow through as planned. In fact, appellant did not initiate contact with CutiePA13 again. Rather, six weeks later, CutiePA13 contacted appellant to no avail. While appellant had sexual conversations with and attempted to entice CutiePA13 to engage in sexual activity, there was no evidence presented that appellant did anything more than initial preparation; a rendezvous was never arranged. The mere sending of the sexually suggestive emails to a minor, though an abhorrent act, is not sufficient to establish attempt for IDSI. Thus, we cannot agree that the Commonwealth presented evidence, beyond mere preparation, toward commission of this attempted crime.

## INDECENT ASSAULT

Similarly, we find the evidence insufficient to support appellant's conviction for criminal attempt/indecent assault. Appellant was convicted of attempted indecent assault under Section 3126(a)(8) of the Crimes Code, which provides as follows:

**§ 3126. Indecent assault**

**(a)**     **Offense defined.--** A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to

come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

- - -

(8)     the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

Indecent contact is defined as, "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101.

Again, there was no evidence presented that appellant did anything more than have sexually inappropriate conversations with the purported victim about touching sexual or intimate body parts for the purposes of the statute. While it is clear that appellant's intent was sexual in nature and objectionable, without more, we cannot find that a substantial step was taken. Thus, for the reasons stated above, we are unable to find sufficient evidence to support a finding of criminal attempt/indecent contact.

## UNLAWFUL CONTACT WITH A MINOR

We now turn to appellant's convictions of attempt/UCM. We find the Internet communications at issue are sufficient to affirm appellant's conviction for violating 18 Pa.C.S.A. § 6318. Unlawful contact with a minor is defined, in pertinent part, as follows:

(a)     **Offense defined.--** A person commits an offense if he is intentionally in contact with a minor for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1)     Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318(a)(1).[10] The jury verdict sheet reveals that the Commonwealth premised its charge of criminal attempt at unlawful contact with a minor on two specific offenses in Chapter 31 – IDSI and indecent assault.

[10]     We note that since the time of [Petitioner's] offense, the UCM statute has been amended; the language "or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor" was added. See 18 Pa.C.S.A. § 6318, Historical and Statutory Notes. This may explain why appellant was charged with attempted unlawful contact rather than unlawful contact itself.

The evidence is sufficient to support a conviction for criminal attempt/UCM based upon appellant's sexually explicit communications to one he believed to be a 13-year-old girl.

As this court explained in Commonwealth v. Morgan, 913 A.2d 906, 910-911 (Pa.Super. 2006), appeal denied, 592 Pa. 788, 927 A.2d 623 (2007):

> **[O]nce Appellant contacts or communicates with the minor for the purpose of engaging in the prohibited activity, the crime of unlawful contact with a minor has been completed.** Actual sexual intercourse with a complainant under the age of sixteen years in not an element of the crime contemplated in 18 Pa.C.S. § 6318. Therefore, the actor need not be successful in completing the purpose of his contact or communication with the minor. Here, the contact proscribed by 18 Pa.C.S. § 6318 occurred when Appellant engaged in two online instant message exchanges.

The Commonwealth presented evidence that appellant contacted CutiePA13, a "minor," over the internet. The Commonwealth demonstrated that appellant engaged in sexually explicit communications, making statements to CutiePA13 for the purposes of engaging in both oral and vaginal sexual acts with her. It is not necessary that the underlying sexual offense of IDSI or indecent assault be carried out. See Commonwealth v. Evans, 901 A.2d 528 (Pa.Super. 2006); Morgan, supra. Thus, appellant clearly took a substantial step in completing this crime when he sent messages over the internet to a purported minor in this Commonwealth within the purview of 18 Pa.C.S.A. § 6318(c) (defining a "minor" as "[a]n individual under 18 years of age" and "contacts" as "[d]irect or indirect contact or communication by any means, method or device, including contact or communication in person"). It is not necessary for a defendant to take any further steps to have physical contact with the minor, such as driving to a meeting place, as the crime of UCM is complete upon the sexually explicit communication. Morgan, supra. We conclude that the evidence, as well as all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain this attempt conviction.

<u>CORRUPTION OF MINORS</u>

Appellant was also convicted of criminal attempt/corruption of minors, which is defined in relevant part as:

> (1)    Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages and such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1).

Appellant was over 18 years of age, and CutiePA13 was purported to be less than 18 years of age. During their internet chats, appellant encouraged the purported minor to engage in a sexual relationship with him, suggesting that they have oral and vaginal

intercourse. A 29-year-old man having sex with a 13-year-old girl is precisely the type of activity the corruption of minors statute was intended to curtail. Furthermore, the Commonwealth need not prove that the minor's morals were actually corrupted; "rather, a conviction for corrupting morals will be upheld where the conduct of the defendant 'tends to corrupt' the minor's morals." <u>Commonwealth v. Mumma</u>, 489 Pa. 547, 414 A.2d 1026 (1980). The substantial step taken in furtherance of this crime was appellant's act of having an internet conversation with a minor which consisted of his statements enticing her to have oral and vaginal sex with him. Upon review of the record, we find that the evidence was sufficient to sustain convictions of criminal attempt/corruption of minors.

(<u>Id.</u> at 11-21 (emphasis in Superior Court's Memorandum)).

There is no basis for this Court to conclude that the Superior Court's decision to deny Petitioner's claim that there was insufficient evidence to support his convictions for attempted unlawful contact with a minor and attempted corruption of a minor was an "unreasonable application of" <u>Jackson</u> or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). This Court, which must give "considerable deference under AEDPA," to the Superior Court's adjudication of this same claim, <u>Coleman</u>, 132 S.Ct. at 2065, cannot grant Petitioner relief under the circumstances presented here. He challenges the Superior Court's decision by arguing that "the only evidence [to support the convictions at issue] was the chats. There was no meeting. No set upon time and date. No motel reservations, driving directions, plan or bus tickets, etc." [ECF No. 5 at 8]. The Superior Court, however, explained why that type of evidence is not required to support his convictions for the crimes at issue.

Based upon all of the foregoing, Petitioner's claim that there was insufficient evidence to support his convictions of attempted unlawful contact with a minor and attempted corruption of a minor is denied.

### 3. Double Jeopardy Violation: Failure to Merge His Three Convictions of Attempted Unlawful Contact With a Minor

In his next claim, Petitioner contends that his rights under the Double Jeopardy Clause were violated because his three convictions of attempted unlawful contact with a minor were purportedly based upon the same conduct. The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It protects against a second prosecution for the same offense after acquittal; it protects against a second prosecution for the same offense after conviction; and it protects against multiple punishments for the same offense. See, e.g., North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

This claim has no merit. As the Superior Court explained when it denied it on direct review:

> [Petitioner] was convicted of three separate counts of attempt/UCM. These three counts arose from three separate internet communications. These three incidents, separated by lengths of time, clearly constituted three separate criminal acts which support these convictions. The concepts of merger do not apply to those three counts, and double jeopardy protections are not implicated in the present case.

(CP Dkt. No. 75, Lippert 1, No 116 WDA 2007, slip op. at 28).

The Superior Court's decision easily satisfies review under § 2254(d). The jury at Petitioner's trial was instructed that each of the three counts of attempted unlawful contact with a minor that Petitioner was charged with were premised upon a separate conversation that Petitioner initiated with the purported minor. In its final instructions to the jury, the trial court stated: "Now, the defendant is charged with six offenses. Three of those offenses are [attempted] unlawful contact with a minor. And those are as to the three conversations he initiated on the computer or the website." (Day 2 Trial Tr. at 6). The prosecutor also emphasized that point in her closing argument:

> Three of [the charges] are attempt to commit unlawful contact with a minor. Let me explain to you why there were three charges … Because there are three conversations that the defendant initiated…. We are only focusing on the three conversations where the

defendant himself initiated the contact[.] And those three IM messages form the basis of the three attempts to commit unlawful contact with a minor.").

(Day 1 Trial Tr. at 153).

Based upon all of the forgoing, Petitioner's claim that his rights under the Double Jeopardy Clause were violated is denied.

### 4.  Ineffective Assistance of Counsel

In his final two claims, Petitioner contends that his counsel provided him with ineffective assistance of counsel. First, he contends that his trial attorneys were ineffective for failing to call his employer, Norman Loesch, as a character witness. Second, he argues that his pretrial counsel was ineffective for filing the omnibus pre-trial motion and arguing that the counts of unlawful contact with a minor must be dismissed because Petitioner had been conversing with an undercover agent and not a minor. That motion prompted the Commonwealth to amend the Information in order to change the charges at issue to *attempt* counts, thus remedying any problem resulting from the fact that Petitioner had not in fact actually contacted a minor. Petitioner argues that if counsel had not filed the motion, the Information would never have been amended and his defense would have been able to get an acquittal at trial on all charges of unlawful contact with a minor.

The "clearly established Federal law" for AEDPA purposes in which to analyze these claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under <u>Strickland</u>, Petitioner must show that his former counsels' representation fell below an objective standard of reasonableness. 466 U.S. at 688; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 390-91. The law presumes that they were effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate

17

the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted). The Court of Appeals for the Third Circuit has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Strickland also requires that Petitioner demonstrate that he was prejudiced by his counsels' alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different." Id. at 694. As the Third Circuit Court recently explained:

[The petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." Id. at 787-88 (citing Strickland, 466 U.S. at 687). *The likelihood of a different result must be substantial, not just conceivable.* Id.

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) (emphasis added).

The Superior Court applied the correct legal standard when it evaluated this claim. (CP Dkt. No. 109, Lippert 2, 1646 WDA 2010, slip op. at 5-6). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (the legal standard for evaluating ineffective assistance claims in a PCRA proceeding is

18

the same as the federal Strickland standard). Therefore, its adjudication passes federal habeas review under the "contrary to" clause of § 2254(d)(1). See, e.g., Williams, 529 U.S. at 406.

The only question left for this Court to address is whether the Superior Court's adjudication denying either of Petitioner's ineffective assistance claims was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). In conducting this analysis, the Court is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Harrington, 131 S.Ct. at 788 (emphasis added).

### (a) The Failure To Call a Character Witness

Petitioner contends that his trial counsel should have called his employer, Norman Loesch, as a character witness. He argues:

> Counsel knew that I would have to testify, which brought my prior record for *crimen falsi* into evidence…. Counsel knew that this would be a credibility contest. I told counsel of [Loesch] and [Loesch] had contact with a prior public defender…. This witness would have repaired the damage done by the prior record and I believe it would have resulted in an acquittal. This testimony would have been admissible.

[ECF No. 5 at 5].

In denying this claim, the Superior Court first held that Petitioner failed to proffer sufficient evidence to support it:

19

> To establish a claim that counsel was ineffective for failing to call a witness, a defendant must establish that the witness existed and was available, that counsel was informed of the witness's existence, that the witness was ready and willing to testify and that the absence of the witness prejudiced the defendant to a point where the defendant was denied a fair trial.

Commonwealth v. Lauro, 819 A.2d 100, 105 (Pa.Super. 2003), appeal denied, 830 A.2d 975 (Pa. 2003) (citations and quotation marks omitted).

Here, Appellant argues that an undated letter[5] by his employer, Norman Loesch, satisfies the elements set forth in Lauro, supra: "The witness exists. He was also available to testify. As per the [letter], and [A]ppellant's own [letter], counsel knew of him. The witness was prepared to cooperate and testify for [A]ppellant at trial." (Appellant's Brief, at 7). Appellant argues that Loesch would have testified as to Appellant's character for truthfulness to rebut his impeachment through the admission of his prior convictions for *crimen falsi* ….

> [5] Appellant mischaracterizes the unsworn letter as an affidavit.

We conclude there is no arguable merit to Appellant's claim that the omission of this testimony constitutes ineffective assistance of counsel. *Appellant's alleged affidavits are undated and unsworn; other than Appellant's unsupported assertion, there is no evidence that counsel in fact knew of Mr. Loesch's existence.* See Lauro, supra at 105.

(CP Dkt. No. 109, Lippert 2, No. 1646 WDA 2010, slip op. at 6-8 (emphasis added)).[3]

The Superior Court also held that even if Petitioner had offered the appropriate affidavit establishing Loesch's availability and willingness to testify at his trial, the claim of ineffectiveness fails because Loesch's proposed testimony would not have been admissible at trial:

> Mr. Loesch's proposed testimony is not admissible character evidence. Appellant's reputation for truthfulness is a credibility matter reserved for the jury and "[t]he credibility of a witness may be impeached through cross-examination by reference to prior convictions for offenses involving dishonesty and false statement – *crimen falsi* – if the date of the conviction or last day of confinement occurs within ten years of the trial date." Sewak v. Lockhart, 699 A.2d 755, 762 (Pa.Super. 1997) (citations omitted). Appellants prior convictions for "crimes of dishonesty," (N.T. Trial, 3/13/06, at 128),

---

[3]     Petitioner also argued before the Superior Court that Loesch could have provided fact testimony showing that he lacked the intent to commit the crimes because he did not request time off in order to meet the purported minor. He does not raise that argument in his habeas petition. The Superior Court denied this argument, holding that "[a]ny testimony by Mr. Loesch regarding Appellant's potential actions or intent would have been speculative at best." (CP Dkt. No 109, Lippert 2, No. 1646 WDA 2010, slip op. at 9). This Court adds that Loesch's proposed fact testimony may have had some relevance to the counts of attempted IDSI and attempted indecent assault; however, those convictions were vacated. He suffered no prejudice from the absence of Loesch's fact testimony with respect to his remaining convictions.

were properly admitted with a limiting instruction for this purpose. Id.; see also Commonwealth v. Mullins, 665 A.2d 1275, 1280 (Pa.Super. 1995) ("[*Crimen falsi*] evidence is relevant because its existence places the veracity of the witness's entire testimony into doubt.").

> We have previously noted the position of our Supreme Court that:
>
> Character evidence of the defendant's truthfulness is admissible … if … the defendant's character for truthfulness was attacked by evidence of bad reputation. The Pennsylvania Supreme Court further explained that [o]ne's character for truthfulness refers not to suggestions of particular instances of honesty or dishonesty, but rather to one's general reputation in the community for telling the truth.

Commonwealth v. Constant, 925 A.2d 810, 822-23 (Pa.Super. 2007), appeal denied, 932 A.2d 1285 (Pa. 2007) (citations and quotation marks omitted).

Appellant simply concludes that "the witness would have offered testimony as the character of the appellant" and incorrectly asserts that "evidence of appellant's character would have been admissible at trial." (Appellant's Brief, at 8). He states that Mr. Loesch's testimony would show that "the appellant was honest with Loesch about his prior record, thus establishing his honestly and character, and repairing the damage that was done by the prior record." (Id. at 10). Such testimony of "particular instances of honesty or dishonesty" would be inadmissible to rebut his prior record of *crimen falsi*. Constant, supra at 822-23; see also Pa.R.E. 405(b) ("Specific instances of conduct are not admissible to prove character or a trial of character …"). Appellant offers no admissible evidence of his reputation for truthfulness in the community; he merely seeks to have Mr. Loesch vouch for his good character because Appellant purportedly told him the truth in the past about his prior criminal record. See Constant, supra at 822-23. Therefore, Appellant's assertion that counsel was ineffective for omitting this testimony is without merit.

Id. at 7-9.

The Superior Court's decision was neither an "unreasonable application of" Strickland nor an

unreasonable determination of the facts. 28 U.S.C. § 2254(d). This Court is bound by its state law

determination that Loesch's proposed testimony would not have been admissible as character evidence

and has no authority to review it. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004)

("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law

questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)). See also Real v. Shannon, 600

F.3d 302, 309-10 (3d Cir. 2010).  Therefore, there is no basis for this Court to provide habeas relief on this claim.

### (b)      Counsel's Decision to File the Pre-Trial Motion

Petitioner argues that his pre-trial counsel, Attorney Konzel, was ineffective for filing the omnibus pre-trial motion, which ultimately resulted in the Commonwealth amending the Information to change the unlawful contact with a minor counts to attempt counts.  He contends that if she had waited until trial to argue that the Commonwealth could not establish the crime of unlawful contact with a minor because he had not been in contact with an actual minor, he would have been acquitted of those counts.  The Superior Court denied this claim because:

> [O]ur Supreme Court has held that "an attempt crime is necessarily a lesser-included offense of the substantive offense, [and] a defendant may be convicted of an attempt crime even if the Commonwealth charged him with the substantive offense but not attempt."  Commonwealth v. Sims, 919 A.2d 931, 933 (Pa. 2007); see also Commonwealth v. McCollum, 926 A.2d 527, 529 (Pa.Super. 2007) (affirming conviction for criminal attempt as a lesser-included offense where defendant was charged with theft by unlawful taking).  Therefore, Appellant could have been convicted for criminal attempt/unlawful contact with a minor even if the trial court had not allowed amendment of the charges before trial.

> Consequently, Appellant offers no pertinent authority to support his claim.  He fails to articulate how counsel was ineffective for properly arguing for dismissal of charges in the Omnibus Pretrial Motion where she believed that "an essential element of the crime cannot be met," (Omnibus Pre-Trial Motion for Relief, 10/14/05, at 2), instead of waiting out the trial and hoping for relief on a motion for a judgment of acquittal.  Furthermore, counsel had no control over whether the Commonwealth would have moved for, or the trial could would have permitted, an appropriate amendment to the informations, or whether amendment would be necessary to convict Appellant of criminal attempt.  See Pa.R.Crim.P. 564 (providing, *inter alia*, that "[t]he court may allow and information to be amended … provided the information as amended does not charge an additional or different offense.") (emphasis added); Sims, supra, at 933.  (See also Lippert, 964 A.2d 944, unpublished memorandum supra, at 22-24 (holding that trial court did not abuse its discretion to amend information))….

(Id. at 12-13).

As was the case with Petitioner's other claims, he has failed to demonstrate that the Superior Court's decision denying this claim was either an "unreasonable application of" Strickland or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  He cannot show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of his trial would have been different, see Strickland, 466 U.S. at 694, because the Superior Court held that state law would have permitted his conviction of attempted unlawful contact with a minor even if the Information had not been amended prior to the trial.  Once again, this Court is bound by the Superior Court's state law determination and has no authority to review it.  See, e.g., Estelle, 502 U.S. at 67-68; Priester, 382 F.3d at 402; Real, 600 F.3d at 309-10.  In addition, as the Superior Court explained, even if Konzel had not filed the pre-trial motion, the Commonwealth still may have moved to amend the Information, and the trial court would have had the discretion to grant its request.

Based upon all of the foregoing, Petitioner's claims that he received ineffective assistance of counsel are denied.


**C.      Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied.  Accordingly, a certificate of appealability is denied.

23

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied and a certificate of appealability is denied. An appropriate Order follows.

Dated: January 15, 2013

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN A. LIPPERT,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 11-131 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **S.R. GLUNT, <u>et</u> <u>al.</u>,** | ) | |
| **Respondents.** | ) | |

## <u>ORDER</u>

AND NOW, this 15th day of January, 2013;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED and a

certificate of appealability is DENIED. The Clerk of Courts is directed to close this case.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge